UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charles MacDonald, M.D.,

        Plaintiff,                      **MEMORANDUM OPINION AND ORDER**

v.                                         Civil No. 09-1246 ADM/JJG

Summit Orthopedics, Ltd.,
Robert Anderson, M.D.,
David Falconer, M.D.,
Paul Donahue, M.D.,
Michael Forseth, M.D.,

        Defendants.

___

H. Le Phan, Esq., Paul J. Zech, Esq., and Ruth S. Marcott, Esq., Felhaber, Larson, Fenlon & Vogt, PA, Minneapolis, MN, on behalf of Plaintiff.

Daniel N. Rosen, Esq., and Anthony G. Edwards, Esq., Parker Rosen, LLC, Minneapolis, MN, on behalf of Defendant Summit Orthopedics, Ltd.

Natalie Wyatt-Brown, Esq., and Jeffrey B. Oberman, Esq., Oberman, Thompson & Segal, LLC, Minneapolis, MN, on behalf of Defendants Robert M. Anderson, M.D., David Falconer, M.D., Paul Donahue, M.D., and Michael Forseth, M.D.

___

# I. INTRODUCTION

On October 21, 2009, the undersigned United States District Judge heard oral argument on the Motion to Dismiss [Docket No. 9] brought by Defendants Robert Anderson, M.D., David Falconer, M.D., Paul Donahue, M.D., and Michael Forseth, M.D. (collectively "the Individual Defendants"). Plaintiff Charles MacDonald's ("MacDonald") Amended Complaint [Docket No. 2] asserts eleven claims, including several under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C §§ 1001-1461. For the reasons set forth below, the Individual Defendants' Motion is granted in part and denied in part.

## II. BACKGROUND[1]

MacDonald is a co-founding member of Metropolitan Hand Surgery Associates ("MHSA") and was employed by MHSA as a full-time physician from 1976 until he retired in January 2001. Am. Compl. ¶ 10. The Individual Defendants also are former employees and officers of MHSA. Id. ¶¶ 4-7.

In 1997, MacDonald entered into a deferred compensation plan ("the Plan") with MHSA that provided him with income upon the termination of his employment with MHSA. Id. ¶¶ 11-12; Oberman Decl. [Docket No. 12], Ex. A (Deferred Compensation Agreement). Four other physicians who worked at MHSA also participated in the Plan. See Am. Compl. ¶ 19; Oberman Decl. Ex. B (Dec. 20, 2007 Letter).[2] When MacDonald retired, the amount of his deferred compensation was $308,915. Am. Compl. ¶ 13. The terms of the Plan provided for MacDonald to receive his deferred compensation in 120 equal monthly installments. Id. ¶ 15.

MHSA began paying MacDonald his deferred compensation in 2001 in accordance with the Deferred Compensation Agreement. Id. ¶ 17. On January 1, 2007, MHSA merged[3] with Defendant Summit Orthopedics, Ltd. ("Summit") and began the process of winding up its

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

[2] Although matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, "documents necessarily embraced by the complaint," such as the Deferred Compensation Agreement and the December 20, 2007 Letter, "are not matters outside the pleadings" and are "properly part of the Rule 12 record." See Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004) (quotations omitted).

[3] The Individual Defendants claim the transaction was a partial acquisition, not a "merger," but concede that the precise nature of the transaction is irrelevant to the issues raised by the Motion to Dismiss. Defs.' Mem. in Supp. of Mot. [Docket No. 14] at 3, n.4.

business.  Id. ¶¶ 20, 24.  MacDonald alleges that at the time of the merger, MHSA paid $183,513 to the Individual Defendants, "thereby depleting the assets available to pay the obligation owed to [him] while preferring such [Individual] Defendants' own personal interests."  Id. ¶ 21.

On June 1, 2007, MHSA ceased paying MacDonald his deferred compensation.  Id. ¶ 18.  MHSA notified MacDonald by a letter dated December 20, 2007, that it would no longer make payments under the Plan because (1) MHSA had ceased active operations as of December 31, 2006; (2) MHSA had substantially wound up its business; and (3) MHSA was unable to fully pay all of its debts.  Id. ¶ 19.  MHSA issued a check in the amount of $16,525, representing MacDonald's final deferred compensation payment under the Plan.  Dec. 20, 2007 Letter.  Additionally, the letter explained the method MHSA used to calculate the final payments for each participant in the Plan and claimed that the method was "an effort to be as fair as possible."  Id.  On January 1, 2008, MHSA was statutorily dissolved as a professional association.  Am. Compl. ¶ 27.

MacDonald filed this action alleging ERISA and state law claims on May 28, 2009.  He alleges the Individual Defendants overpaid themselves in the form of officer compensation, deferred compensation, and profit sharing and through the transfer of MHSA's "ancillary services" to Summit in exchange for personal equity interests in Summit.  Pl.'s Mem. Opp'g Mot. [Docket No. 16] at 4.  In addition, he claims that MHSA should have paid a greater amount in deferred compensation to participants in the Plan in 2007 because the greater amount would have been offset by tax benefits and, thus, would not have further diminished MHSA's ability to pay other obligations.  Id.  Ultimately, he alleges that the actions of the Individual Defendants

3

resulted in the depletion of available funds to pay the deferred compensation obligation owed to him under the Plan.

## III. DISCUSSION

### A.     Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### B.     ERISA

### 1. Breach of Fiduciary Duties

In the Amended Complaint, MacDonald asserts claims against the Individual Defendants under ERISA for breach of fiduciary duties, and he seeks recovery for losses suffered as a result of the breach (Count III) as well as equitable relief (Count II). The Individual Defendants move for dismissal of the breach of fiduciary duties claims, arguing that they did not owe any fiduciary duties to MacDonald because the Plan is a "top hat plan." Defs.' Mem. in Supp. of Mot. at 8. A "top hat plan" is an unfunded, deferred compensation plan "for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). Such plans are exempt from many provisions of ERISA, including the fiduciary responsibility requirements. See Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 932 n.6 (8th Cir. 1999).

As a threshold issue, the parties dispute whether the burden is on MacDonald to show that the Plan is *not* a top hat plan or on Defendants to show that it *is* a top hat plan. See Pl.'s Mem. Opp'g Mot. at 10; Defs.' Reply Mem. in Supp. of Mot. [Docket No. 23] at 3, n.1. The Eighth Circuit has yet to address the issue, but courts in other jurisdictions have uniformly held that "[t]he burden of establishing the existence of a top hat [plan] rests on the party asserting that it is a top hat plan." See In re New Century Holdings, Inc., 387 B.R. 95, 110 (Bankr. D. Del. 2008); Deal v. Kegler Brown Hill & Ritter Co. L.P.A., 551 F. Supp. 2d 694, 700 (S.D. Ohio 2008) ("The burden is on Defendant to show that the . . . Plan is a top hat plan."); Carrabba v. Randalls Food Markets, Inc., 38 F. Supp. 2d 468, 478 (N.D. Tex. 1999) (imposing the burden on the party asserting that the plan qualified as a top hat plan); Alexander v. Brigham & Women's Physicians Org., 467 F. Supp. 2d 136, 142 (D. Mass. 2006) (same); Maynard v. Merrill Lynch & Co., Inc., No. 8:07-cv-1149-T-23MSS, 2008 WL 4790670, at *11 n.130 (M.D. Fla. Oct. 28,

5

2008) (same); <u>Violette v. Ajilon Finance</u>, No. Civ.A. 03-5520, 2005 WL 2416986, at *4 (D.N.J. Sept. 30, 2005) (same).  Finding no authority to the contrary, the Court concludes that Defendants bear the burden of showing that the Plan is a top hat plan.

There is no dispute that the Plan is unfunded.  Pl.'s Mem. Opp'g Mot. at 10.  Therefore, whether the Plan qualifies as a top hat plan turns on whether the Plan was offered to (1) a select group of (2) management or highly compensated employees."  <u>Id.</u> at 10-11.  The Individual Defendants argue that it is undisputed that the Plan was offered to only five employees—MacDonald, three of the Individual Defendants, and another physician—all of whom were physician shareholders in MHSA.  As to whether the participants were management or highly compensated employees, the Individual Defendants contend that because the participants were shareholders (some were also corporate officers), they clearly had "negotiating power" to qualify as management or highly compensated employees.  Defs.' Reply Mem. in Supp. of Mot. at 4-5.

MacDonald urges that determining whether the participants were a select group of management or highly compensated employees requires a fact-specific analysis of quantitative and qualitative factors.  Pl.'s Mem. Opp'g Mot. at 11.  "Quantitatively, 'the plan must cover relatively few employees.'"  <u>New Century</u>, 387 B.R. at 111 (quoting <u>In re New Valley Corp.</u>, 89 F.3d 143, 148 (3d Cir. 1996)).  "Qualitatively, . . . plan participants must all be high level employees, either management or highly compensated."  <u>Id.</u> (quotation omitted).  In addition, MacDonald argues, determining whether the Plan is a top hat plan requires considering factors such as "(1) the percentage of the total workforce invited to join the plan (quantitative), (2) the nature of their employment duties (qualitative), (3) the compensation disparity between top hat

6

plan members and non-members (qualitative), and (4) the actual language of the plan agreement (qualitative)." Bakri v. Venture Mfg. Co., 473 F.3d 677, 678 (6th Cir. 2007). MacDonald contends the facts necessary to evaluate these qualitative and quantitative factors are not yet before the Court and, therefore, dismissal of Counts II and III is inappropriate. Pl.'s Mem. Opp'g Mot. at 8-14.

There is no bright-line test for determining at what point a group of participants becomes too large to qualify as a "select group." See Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 288 (2d Cir. 2000) (citations omitted). On the high end, one court has found that a plan offered to as many as 15.34% of employees was nonetheless sufficiently selective to qualify as a top hat plan. Id. at 288-89. In contrast, a plan offered to an only slightly larger percentage, 18.7% of the workforce, was found too large to meet the selectivity requirement. Darden v. Nationwide Mut. Ins. Co., 717 F. Supp. 388, 397 (E.D.N.C. 1989), aff'd, 922 F.2d 203 (4th Cir. 1991), rev'd on other grounds, 503 U.S. 318 (1992).

The Rule 12 record has no information from which to calculate whether the Plan was offered to a select group. There is no information regarding the total number of employees at MHSA or the nature of the employees duties. The Individual Defendants urge the Court, in the spirit of the newly-minted Rule 12(b)(6) standard announced in Twombly and Iqbal, to "use its common sense and judicial knowledge to conclude that MHSA had other nonparticipating employees, . . . nurses, administrative employees, etc., making the participants members of a 'select group.'" Defs.' Reply Mem. in Supp. of Mot. at 4. Although it might be proper to assume that MHSA employed individuals who did not participate in the Plan, it is a much greater leap of faith to blindly assume that the nonparticipating employees outnumbered the

7

participating employees to an extent—based on the caselaw, somewhere in the neighborhood of greater than five-to-one—that the participating employees can properly be viewed as "select." On the current state of the record, the Court refuses the offer to make that leap.

The record fails to establish that the Plan was offered to a "select group." Accordingly, the Court will not decide now whether the participants were management or highly compensated employees. The Individual Defendants' motion to dismiss the ERISA claims for breach of fiduciary duties on the ground that the Plan is a top hat plan not subject to the fiduciary responsibility requirements of ERISA is denied.[4]

### 2. Recovery of Plan Benefits

In Count I, MacDonald asserts a claim under 29 U.S.C. § 1132(a)(1)(B) for recovery of plan benefits in the amount of $141,262. The Individual Defendants argue that they cannot be held personally liable on such a claim because the Amended Complaint fails to plead a factual basis for piercing the corporate veil. See Defs.' Mem. in Supp. of Mot. at 14-17. MacDonald responds that the Amended Complaint alleges a sufficient factual basis for piercing the corporate veil and that the issue cannot be resolved on a motion to dismiss. See Pl.'s Mem. Opp'g Mot. at 14-17.

---

[4] For the first time in their reply brief, the Individual Defendants raise the alternative argument that even if the Plan is not a top hat plan and, thus, they owed fiduciary duties to MacDonald, the Amended Complaint nevertheless fails to allege facts showing that they breached those fiduciary duties. Defs.' Reply Mem. in Supp. of Mot. at 5-7. Because this argument was first raised in a reply brief, the Court declines to address it at this time. See Myre v. State of Iowa, 53 F.3d 199, 201 (8th Cir. 1995) (refusing to consider an argument raised for the first time in a reply brief); Arena Dev. Group, LLC v. Naegele Comm'ns, Inc., Civil No. 06-2806, 2007 WL 2506431, at *7 n.2 (Aug. 30, 2007) ("Because Plaintiffs did not have a fair opportunity to respond to these arguments [first raised in a reply brief], the Court declines to address them.").

Corporate officers cannot be held personally liable for recovery of ERISA benefits if there is no basis for piercing the corporate veil. Minn. Laborers Health & Welfare Fund v. Scanlan, 360 F.3d 925, 928 (8th Cir. 2004) (quotation omitted). In Minnesota, determining whether the corporate veil should be pierced requires the application of a two-prong test. See Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 509, 512 (Minn. 1979). Under the first prong, a court considers a number of factors in determining whether the corporation functioned as a mere instrumentality of the individuals sought to be held personally liable:

> insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

Victoria Elevator, 283 N.W.2d at 512. Under the second prong, a court analyzes whether the party seeking to pierce the corporate veil has established that doing so is necessary to avoid "an element of injustice or fundamental unfairness." Id.

MacDonald argues that to survive a motion to dismiss, a complaint need only put a defendant on "notice" that the plaintiff intends to pursue a veil-piercing theory of liability and that the Amended Complaint does so here. See Murrin v. Fischer. No. 07-CV-1295, 2008 WL 540857, at *22 (D. Minn. Feb. 25, 2008) (holding that to survive a motion to dismiss, a plaintiff is "not required to plead the factors that are set out in Victoria Elevator, for they merely have to provide the defendants with notice as to the theory on which they plan to proceed, and of their intent to pierce the corporate veil") (citing Barton v. Moore, 558 N.W.2d 746, 749-50 (D. Minn. 1997)). In addition, MacDonald argues that the Amended Complaint goes further and pleads factual allegations that the Individual Defendants engaged in self dealing by "siphoning the

lion's share of the funds available for deferred compensation to the detriment of other corporate creditors and [through] the 'merger' with Summit." Pl.'s Mem. Opp'g Mot. at 16. MacDonald maintains that, contrary to the Individual Defendants' assertion, he is not seeking to pierce the corporate veil based merely on an argument that MHSA lacked sufficient funds to pay the deferred compensation or based on an argument that he is entitled to priority over other participants. Rather, he is seeking to pierce the corporate veil because, he alleges, MHSA would have had sufficient funds had the Individual Defendants not overpaid themselves in officer compensation, deferred compensation, and profit sharing, and through the transfer of MHSA's "ancillary services" in exchange for personal equity interests in Summit.

MacDonald has presented allegations that, if true, would establish the existence of more than one factor under the first prong of the Victoria Elevator test. For example, he alleges that during the winding up of MHSA, the Individual Defendants siphoned funds from MHSA, exacerbated MHSA's insolvency, and engaged in self dealing by making payments to themselves in preference to the other participants in the Plan. Further, by transferring their practices to Summit while continuing to receive compensation from MHSA's accounts receivable, the Individual Defendants depleted the accounts receivable funds available to pay deferred compensation. Am. Compl. ¶¶ 21, 74-77. As to the second prong of the Victoria Elevator test, MacDonald's allegations, if proven, would support a finding that the Individual Defendants wound up the business of MHSA in an unjust manner. See West Concord Conservation Club v. Chilson, 306 N.W.2d 893 (Minn. 1981) (holding that a showing that the corporate entity has been operated in an unjust manner with respect to the plaintiff satisfies the second prong of the

Victoria Elevator test).  The Court finds that the Amended Complaint pleads an adequate factual basis to support a veil-piercing theory and therefore denies the motion to dismiss Count I.

**C.     Common Law**

The Individual Defendants also move to dismiss MacDonald's claim against them for common law breach of fiduciary duties (Count XI), arguing that the claim is preempted by ERISA.[5] ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  The term "relate to" in ERISA's preemption clause has been "given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 739 (1985) (alteration in original) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)).  However, "[s]ome state action may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n.21.

In determining whether a state law claim has a connection to an employee benefit plan, the Court considers:

> whether the state law (1) negates an ERISA plan provision; (2) affects relations between primary ERISA entities; (3) impacts the structure of ERISA plans; (4) impacts the administration of ERISA plans; (5) has economic impact on ERISA plans; (6) whether preemption of the state law is consistent with other ERISA provisions; and (7) whether the state law is an exercise of traditional state power.

---

[5] In their opening brief, the Individual Defendants also sought dismissal of MacDonald's unjust enrichment claim (Count IX). See Defs.' Mem. in Supp. of Mot. at 12-14.  MacDonald has since clarified, however, that the unjust enrichment claim is asserted against Summit only. See Pl.'s Mem. Opp'g Mot. at 17 n.1.

Eckelkamp v. Beste, 315 F.3d 863, 870 (8th Cir. 2002). In Eckelkamp, the district court concluded that because a state law breach of corporate fiduciary duty claim and an ERISA breach of fiduciary duty claim involved exactly the same parties, relied on the same facts, and sought the same relief, the state law claim was preempted by ERISA. Id. Applying the seven factors listed above, the Eighth Circuit affirmed, concluding that allowing the plaintiff, a plan beneficiary, to use state law on corporate fiduciary duties to sue the defendants, the plan and the plan fiduciaries, would affect the relations among ERISA entities, alter the structure and administration of the plan, and have an economic impact on the plan; thus, the court held that the state law breach of corporate fiduciary duty claim was preempted by ERISA. Id.

MacDonald responds that his common law fiduciary duty claim is not preempted by ERISA because it does not "relate to" the duties the Individual Defendants owed by virtue of their status as plan fiduciaries; rather it "relates to" the fiduciary duties the Individual Defendants owed to MHSA's creditors, including MacDonald, by virtue of their status as corporate officers, directors, or shareholders of MHSA. Pl.'s Mem. Opp'g Mot. at 17. MacDonald's position finds some support in the caselaw; courts in other jurisdictions have held that ERISA does not preempt a state law breach of corporate fiduciary duties claim. See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc., 793 F.2d 1456, (5th Cir. 1986); accord In re Dehon, Inc., 334 B.R. 55, 68-69 (Bankr. D. Mass. 2005); Carabillo v. Ullico, Inc., 357 F. Supp. 2d 249, 259 n.7 (D.D.C. 2004).

Upon review of the well pleaded facts of the Amended Complaint, the Court concludes that MacDonald's state law breach of corporate fiduciary duties claim is preempted. First, as the Fifth Circuit noted in Sommers, "courts are more likely to find that a state law relates to a benefit

plan if it affects relations among the principal ERISA entitites—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of those entities and an outside party." 793 F.2d at 1467. Here, the state law corporate fiduciary duties claim affects relations between principal ERISA entities—MacDonald as a plan beneficiary and the Individual Defendants as alleged plan fiduciaries.

Second, although the state law corporate fiduciary duties arise from the Individual Defendants' status as officers, directors, or shareholders and the ERISA fiduciary duties arise from their status as alleged plan fiduciaries, the Plan is nonetheless critical to the state law claim because if the Plan did not exist, MacDonald would not be a "creditor" of MHSA and, consequently, would have no cause of action for breach of corporate fiduciary duties. See Bacon v. Stiefel Labs, Inc., ___ F. Supp. 2d ___, 2010 WL 54753, at *14 (S.D. Fla. Jan. 4, 2010) (holding that a state law corporate fiduciary duty claim was preempted by ERISA when the plaintiff would not have a state law claim if it were not for the existence of the ERISA plan). For that same reason, cases such as Sommers holding that ERISA did not preempt a corporate fiduciary duty claim are distinguishable. There the plaintiffs' rights arose *solely* because of their status as shareholders. Here, although MacDonald's state law rights arise as a result of his status as a "creditor," his status as a creditor arises because he is a participant of the Plan.

The factual predicate of MacDonald's state law breach of corporate fiduciary duty claim reveals that it "relates to" the Plan. The claim is therefore preempted, and Count XI is dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 9] is **GRANTED** in part and **DENIED** in part; and

2. Count XI of the Amended Complaint [Docket No. 2] is **DISMISSED**.

BY THE COURT:


　　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 19, 2010.